WAYNE PARSONS, #1685
WAYNE PARSONS LAW OFFICES
1406 Colburn Street, Suite 201C
Honolulu, HI 96817
Telephone No. (808) 845-2211
Facsimile No.  (808) 843-0100

Of Counsel:
TRECKER FRITZ & WILLIAMS

COLLIN (MARTY) FRITZ, #1763
ALLEN K. WILLIAMS, #2900
820 Mililani Street, Suite 701
Honolulu, HI 9813
Telephone No. (808) 528-3900
Facsimile No.  (808) 533-3684

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER W. BEST AND REBA D. BEST,<br><br>            Plaintiffs,<br><br>   vs.<br><br>UNITED STATES OF AMERICA; DOE DEFENDANTS 1-10; and DOE ENTITIES 1-10,<br><br>           Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL NO. 17-229

COMPLAINT; SUMMONS

## COMPLAINT

Plaintiffs CHRISTOPHER BEST and REBA BEST, husband and wife, by and through their attorneys, WAYNE PARSONS and TRECKER FRITZ & WILLIAMS, for claims for relief against Defendants, above-named, allege and aver as follows:

## JURISDICTION

1.      This Court has exclusive subject matter jurisdiction over the controversy herein pursuant to 28 U.S.C. Section 1346(b)(1) because it is a civil action against the United States of America for money damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.

2.      By way of claims filed on or about September 23, 2016, Plaintiffs have fully complied with the claims-presentation requirements of the Federal Tort Claims Act, 28 U.S.C. §2674(a).  The Plaintiffs' tort claim was denied on March 29, 2017. Accordingly, Plaintiffs have satisfied all procedural prerequisites.

## PARTIES

3.      Plaintiffs CHRISTOPHER BEST (hereinafter "Mr. Best"), and REBA D. BEST (hereinafter "Mrs. Best"), were, at all times mentioned herein, residents of

the County of Kauai, State of Hawaii.

4.      At all times herein relevant, Plaintiffs CHRISTOPHER BEST and REBA BEST were and are married as husband and wife.

5.      At all times material, Defendant UNITED STATES OF AMERICA acted by and through the DEPARTMENT OF VETERANS AFFAIRS (hereinafter "VA"), a governmental subdivision of the United States duly formed in accord with the United States Constitution and located throughout the country, including at the VA clinic located at Tripler Army Medical Center, Hawaii,.

6.      Defendants Does 1-10 (hereinafter referred to as "DOE Defendants") are sued herein under fictitious names for the reason that, despite diligent and good faith efforts to obtain information, their true names and identities are unknown to Plaintiffs, except that they were connected in some manner with the named Defendants and were persons, corporations, divisions, subsidiaries, parent corporations, entities, agents, representatives, associations, affiliates, associates, co-venturers, business entities, employers, employees, servants, vendors, suppliers, manufacturers, sub-contractors and contractors or governmental entities, agencies, or bodies, responsible in some manner presently unknown to Plaintiffs for the injuries and damages to the Plaintiffs; and Plaintiffs ask leave to identify their true names and capacities, activities or responsibilities when the same are ascertained.

7.      During the course of routine health monitoring and surveillance under

the control and/or supervision of Veterans Administration ("VA") employees and/or agents, and VA affiliated and/or VA-associated health care providers (collectively, "VA providers"), Mr. Best underwent routine periodic laboratory testing that included, among several other assays, measurement of his serum Prostate-Specific Antigen ("PSA") levels. PSA is a protein produced by the prostate gland. Elevated PSA levels may indicate prostate cancer.

8.      On or about December 19, 2013, Mr. Best's PSA level was 6.42 ng/mL. The reference range, or "normal" range, for PSA levels at the VA laboratory that performed the testing was 0 to 4.0 ng/mL.

9.      At that time Mr. Best was not informed that his PSA level was abnormally elevated; in fact, he was unaware that PSA testing had even been performed, and he had no knowledge at all about PSA testing or the potential health implications of an elevated PSA level.

10.     At that time the VA Providers took no action in response to the elevated PSA; in fact, this elevated PSA level is not mentioned in any narrative notation in the medical record for this time period.

11.     On September 29, 2014, PSA testing was repeated by VA Providers, again as one component among a panel of several other routine laboratory tests.

12.     The results of that testing showed that Mr. Best's PSA level had risen to 8.59 ng/mL, more than twice the upper limit of the reference range.

13.     A rapid rise in PSA level over a short period of time is another indication of prostate cancer.

14.     Again, the VA Providers failed to take any action to evaluate the cause of this abnormal laboratory test value or to determine whether Mr. Best had prostate cancer.

15.     This second instance of a laboratory test result showing an elevated (and rapidly rising) PSA level is not mentioned in any narrative notation in the medical record.

16.     Once again, Mr. Best was not informed that he had an abnormally elevated and rising PSA level, nor of the potential implications of that abnormal level.

17.      Approximately nine months later, on June 2, 2015, a routine panel of laboratory tests was again repeated by the same VA Providers and Mr. Best's PSA level had risen yet again, now to 14.13 ng/mL.

18.     This elevated level of 14.13 ng/mL finally prompted the VA Providers to refer Mr. Best for a urology consultation, which (because of VA procedural and systems-level delays) could not be accomplished until July 31, 2015.

19.     The urology consultation performed by a private urologist on the island of Kauai included a digital rectal examination of Mr. Best's prostate gland which revealed suspicious right-sided firmness.

20.   As a result of the findings of the digital rectal exam, plans were made for performance of a transrectal ultrasound study ("TRUS") with transrectal biopsy of the prostate.

21.   The TRUS and biopsy were performed on Mr. Best on August 6, 2016, and the pathology interpretation of the biopsy was signed-out on August 10, 2015.

22.   The pathologist reported that Mr. Best had a high-grade prostatic adenocarcinoma (an aggressive cancerous tumor) with a Gleason score of 9.2.

23.   The Gleason grading system evaluates the prognosis of prostate cancer based upon biopsy results. Scores range from 2 to 10, with 2 representing the most well-differentiated (least aggressive) tumors and 10 the least-differentiated (most aggressive) tumors. Gleason scores are categorized into groups that show similar biologic behavior: low-grade (well-differentiated), intermediate-grade, moderate to poorly differentiated, or high-grade. Mr. Best's score of 9 is considered high-grade, placing him in the poorest prognostic group.

24.   Treatment plans were discussed, but implementation of those plans proceeded slowly and was impeded by the Defendant's procedural and bureaucratic delays, as too often is the case with health care delivery under the VA system.

25.   Unwilling to tolerate further delays in receiving needed therapy, Mr. Best sought care at the University of Texas M. D. Anderson Cancer Center ("MDACC").

26.    On September 17, 2015, surgeons at MDACC performed a robotic-assisted laparoscopic radical prostatectomy and bilateral pelvic lymph node dissection on Mr. Best.

27.    MDACC pathologists examined the surgical specimens that were removed during the operation which revealed that the prostate gland contained a single focus of prostatic adenocarcinoma of mixed acinar and ductal types.

28.    The tumor was located in the right lateral, right posterolateral, right posterior, mid posterior, left posterior, left posterolateral and left lateral peripheral zones. The tumor focus measured 4.0 x 2.0 cm in the largest cross-sectional dimension and was present in the three cross sections of the prostate and extensively in the apex and base.

29.    The tumor exhibited extensive multifocal extraprostatic extension and invaded both seminal vesicles, including both the intra- and extra-prostatic portions, as well as the perivesicular soft tissue.

30.    Perineural and lympho-vascular invasion was present.

31.    Metastases arising from the primary prostatic tumor focus were found in multiple pelvic lymph nodes, including nodes in the left external iliac and obturator distribution, the left distal hypogastric distribution, and the right external iliac and obturator distribution.

32.    Postoperative serial re-testing of his PSA levels performed since the MDACC procedures has shown that Mr. Best's prostate cancer has not been eliminated.

33.    Although his PSA level initially plummeted dramatically, it never reached a nadir of zero – and the PSA level is now rising slowly, albeit still within the reference range.

34.    Mr. Best's metastatic prostate cancer cells still remain and are growing in Mr. Best's body. Currently, no treatments can cure metastatic prostate cancer.

35.    Mr. Best remains under close medical surveillance with repeated PSA testing. It is anticipated that he will soon need to begin adjuvant therapy for his metastatic prostate cancer with palliative (non-curative) modalities such as hormonal therapy (including androgen deprivation strategies such as surgical or chemical castration), toxic chemotherapy, immunotherapy, and/or radiation therapy. Each of those modalities carries significant risk for complications and serious side-effects, and several entail pain and discomfort.

36.    The acts and omissions of Defendant UNITED STATES OF AMERICA, by and through the Department of Veterans Affairs and VA Providers as described hereinabove were negligent and fell below the standard of care for medical care providers.

37.    As a direct and proximate result of the negligence aforesaid by Defendant UNITED STATES OF AMERICA, by and through the Department of Veterans Affairs and VA Providers,  Mr. Best's aggressive prostate cancer remained undiagnosed and untreated for well over 18 months.

38.    Had Mr. Best received proper and timely diagnosis and treatment from the VA Providers, in conformance with applicable standards of care, then to reasonable medical probability his prostate cancer would have been identified and treated before it metastasized beyond the prostate gland itself, thereby providing him a probability of cure and averting his past, present and future pain, suffering, emotional distress and anguish, loss of enjoyment of life, and premature death from the metastatic disease and its associated adjuvant therapies.

39.     Mr.  Best also makes the claim of lack of informed consent for failure of the VA Providers to inform him of his PSA lab results in 2013 and 2014 and to inform him of his health risks, testing that could be done and treatment options. That failure to disclose and inform led to delays in diagnosis and treatment of his cancer.

40.    Mr. Best would have returned to work as a ship captain of a merchant ship had he not been found to have incurable prostate cancer.

41.    Mr. Best would have earned an annual income in excess of $200,000 per year commencing in 2015 had he not been diagnosed with incurable prostate cancer requiring him to undergo treatment for the rest of his life and preventing him from working as a seaman.

## **FIRST CAUSE OF ACTION**

(Negligence)

42.     Plaintiffs refer to, and incorporate herein by this reference, paragraphs 1 through 41, above, as though fully set forth herein.

43.     The negligent delay in diagnosis of Mr. Best's prostate cancer allowed the cancer to grow and advance to a condition which was incurable and required medical treatment that should have been unnecessary but for the negligence and/or culpable carelessness of the Defendants, and each of them, and/or their agents, employees and/or representatives.

41.     Defendant UNITED STATES OF AMERICA, by and through the Department of Veterans Affairs and VA Providers, breached the duty of due care to use reasonable care in examining, testing and treating Mr. Best.

42.     Defendant UNITED STATES OF AMERICA, by and through the Department of Veterans Affairs and VA Providers, breached their duty to inform Plaintiff of the increased risk of harm posed by the escalating PSA levels so Plaintiff could have undergone earlier diagnosis and curative treatment of his Gleason 9 prostate cancer.

43.     As a direct and proximate result of the negligence of Defendant UNITED STATES OF AMERICA, by and through the Department of Veterans Affairs and VA Providers, Mr. Best foreseeably and avoidably developed an incurable prostate cancer for which he will incur significant expenses for medical

and allied care, increased need for frequent and invasive monitoring, past and future, significant loss of income, as well as pain, suffering, mental anguish, inconvenience and interference with his life culminating in death from prostate cancer that he would not otherwise have suffered.

## SECOND CAUSE OF ACTION

### (For Lack of informed consent)

44.     Plaintiffs refer to, and incorporate herein by this reference, paragraphs 1 through 43, above, as though fully set forth herein.

45.     Defendant UNITED STATES OF AMERICA, by and through the Department of Veterans Affairs and VA Provers, failed to inform Mr. Best of his PSA test results as alleged herein.

46.     Defendant UNITED STATES OF AMERICA, by and through the Department of Veterans Affairs and VA Providers, negligently failed to explain the meaning and significance of PSA and prostate cancer as alleged herein.

47.     As a proximate result, Plaintiffs have suffered general and special damages as alleged more specifically above.

## SECOND CAUSE OF ACTION

### (Loss of Consortium)

48.     Plaintiffs refer to, and incorporate herein by this reference, paragraphs 1 through 47, above, as though fully set forth herein.

49.     At all times material to this Complaint Plaintiff Mrs. Best was the

lawful husband of Plaintiff Mr. Best.

50.    As a further result of the Defendants' acts and omissions, Plaintiff Mrs. Best, individually, has suffered mental and emotional distress and has lost marital consortium, which includes a loss of companionship, care, support, society, aid and comfort all to her loss and damage.

WHEREFORE, Plaintiffs pray for the following damages, jointly and severally, against all Defendants:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For attorneys' fees;

4.    For prejudgment interest as allowed by law;

5.    For costs of suit; and

6.    For such other and further relief as the Court may seem just and proper.

DATED:  Honolulu, Hawaii, May 22, 2017.

/s/ Wayne Parsons
WAYNE PARSONS
COLLIN FRITZ
ALLEN K. WILLIAMS
Attorneys for Plaintiffs